IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ROBERT GERARD FURTWANGLER, ) | Civil Action No. 3:09-2971-HFF-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER ) | |
| OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") partially denying his claims for Disability Insurance Benefits ("DIB"), Child's Insurance Benefits ("CIB"), and Supplemental Security Income ("SSI").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff filed applications for SSI on July 20, 2006, and DIB and CIB on August 1, 2006, alleging disability since August 1, 1998.[1] (Tr. 13, 130-134). Plaintiff's applications were denied initially and on reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). After a hearing held on September 9, 2008, the ALJ issued a decision on February 29, 2009. The ALJ found that Plaintiff was disabled beginning on April 1, 2006, because Plaintiff met § 12.04 of the Listing of Impairments. Plaintiff was not found to be disabled prior to the attainment

---

[1] Plaintiff later amended his onset date to March 27, 2005.

of age 22, as required for CIB. See 42 U.S.C. § 402(d)(1); 20 C.F.R. § 404.350(a)(5). Prior to April 1, 2006, Plaintiff was found to be disabled because, under the vocational guidelines promulgated by the Commissioner, Plaintiff remains able to perform work found in the national economy. See generally 20 C.F.R., Part 404, Subpart P, Appendix 2.

Plaintiff was twenty-one years old at the time he alleges he became disabled and twenty-five years old at the time of the ALJ's decision. He has a high school education plus some college with no past relevant work. While the claimant has a history of work activity as a grocery bagger and cashier, his earnings records indicate that his work was performed at a level below substantial gainful activity. Tr. 20. Plaintiff alleges disability since March 27, 2005, due to bipolar disorder. Tr. 16, 41, 202, 250.

The ALJ found (Tr. 16-22):

1. Born on April 14, 1983, the claimant had attained age 22 as of April 1, 2006, the date disability is established (20 CFR 404.350(a)(5)).

2. The claimant meets the insured status requirements of the Social Security Act through September 30, 2007.

3. The claimant has not engaged in substantial gainful activity since March 27, 2005, the amended alleged onset date (20 CFR 404.1520(b), 404.1571 *et. seq.*, 416.920(b) and 416.971 *et. seq.*).

4. Since the amended alleged onset date of disability, the claimant has had the following severe impairment: a bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).

5. Prior to April 1, 2006, the date the claimant became disabled, the claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

6. Prior to April 1, 2006, the date the claimant became disabled, the claimant had the residual functional capacity to perform heavy, unskilled, work. Heavy work is defined as the ability to occasionally

2

       lift and carry fifty pounds. If someone can perform heavy work, it is presumed he can perform medium light or sedentary work. 20 CFR 404.1567(c) and 416.967(c). Such a residual functional capacity is well supported by the weight of the evidence of record.

7. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was born on April 14, 1983 and was 21 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

11. Prior to March 31, 2006, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

12. Beginning on April 1, 2006, the severity of the claimant's bipolar disorder has met the requirements of Listing 12.04 of Appendix 1.

13. The claimant was not disabled prior to April 1, 2006 (20 CFR 404.1520(g) and 416.920(g)), but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(d) and 416.920(d)).

14. The claimant's substance use disorder is not a contributing factor material to the determination of disability (20 CFR 404.1535).

      On September 11, 2009, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on November 13, 2009.

      The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v.

Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## **MEDICAL RECORD**

Plaintiff was diagnosed with bipolar affective disorder in 1998. His condition stabilized after treatment with medication. In late May 2001, Plaintiff stopped taking his medication and was admitted to the Institute of Psychiatry ("IOP") at the Medical University of South Carolina after getting into a fight with his brother during a manic episode. Tr. 259, 262. His symptoms included decreased sleep, racing thoughts, pressured speech, impulsiveness, aggression, substance abuse (daily marijuana use), and delusions. It was noted that he was a high school honors student. Plaintiff was discharged from the hospital five days later, in stable and improved condition. Tr. 259-262, 264, 275, 279.

On March 27, 2005 (Plaintiff's alleged onset date), Plaintiff went to the Roper Hospital emergency room. See Tr. 286-290. The impression was bipolar disorder-manic episode and noncompliance with Lithium. It was noted that Plaintiff decided on his own to taper off his Lithium and had his last dose seven to ten days previously, had no sleep in five days, was hearing voices, and had suicidal thoughts. He was noted to be unkempt with a depressed affect. Plaintiff was voluntarily admitted to Palmetto Lowcountry Behavioral Health (Palmetto Health). Tr. 286-291. Plaintiff

reported he was enrolled as a student at a technical college and worked as a cashier at a convenience store. Tr. 294.   He said he stopped his Lithium because he thought it turned him into a Zombie. Plaintiff thought that his daily marijuana use contributed to his mania.  Tr. 291-292.  At the time of his admission to Palmetto Health, Plaintiff's Global Assessment of Functioning (GAF) was scored at 21.[2]  Urinalysis was negative for marijuana.  Plaintiff's alcohol level was 0.9.  After approximately ten days, Plaintiff was discharged with no symptoms of psychosis.  Dr. Samuel Rosen, a psychiatrist, rated Plaintiff's GAF at the time of discharge as 50.  Tr. 291-299, 299, 316-318

A few days after his discharge, Plaintiff's condition deteriorated and he was voluntarily readmitted to Palmetto Health on April 15, 2005, with complaints of decreased sleep, increased rate of thought, flight of ideas, increased energy, delusions, auditory hallucinations, distractibility, and impulsiveness.  Dr. Rosen rated Plaintiff's GAF upon readmission as 35 and questioned whether Plaintiff had taken his Seroquel (anti-psychotic medication) as prescribed.  It was also noted that Plaintiff was taking only 300 milligrams of Lithium twice a day instead of 600 milligrams twice a day due to either a prescription or pharmacy filling error.  Plaintiff subsequently admitted he had not taken his Seroquel on a regular basis.  A urine screen was positive for marijuana at the time of Plaintiff's admission. Tr. 310-315.

---

[2]The GAF contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning, generally for the level of functioning at the time of evaluation. A GAF score between 21 and 30 may reflect that "behavior is considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment." A score of 31 to 40 indicates some impairment in reality testing or communication or "major impairments in several areas," 41 to 50 indicates "serious symptoms" or "serious difficulty in social or occupational functioning," 51 to 60 indicates "moderate symptoms" or "moderate difficulty in social or occupational functioning," and 61 and 70 reflects "mild symptoms" or "some difficulty in social, occupational, or school functioning ."  Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32-34 (4th ed. 2000).

Plaintiff was readmitted to Palmetto Health from May 1 to 12, 2005. It was thought that Plaintiff's failure to do well in follow-up was related to Plaintiff's noncompliance, his continued marijuana abuse, unexplained factors, and the seriousness of his illness. His medications were adjusted and his GAF on discharge was 45. Tr. 326-330. From May 24 to June 8, 2005, Plaintiff was again treated at Palmetto Health. He was discharged with a GAF of 42. Tr. 322-324.

The next medical records are from December 21, 2005. At that time, Plaintiff told a care provider at IOP's Outpatient Clinic that he could no longer afford to see his private psychiatrist. Plaintiff reported he attended the College of Charleston and worked sixteen hours per week as a stocker. His leisure interests included using a computer. Plaintiff said he had sleep problems and reported daily marijuana use. Examination revealed Plaintiff was anxious and had a depressed mood, but no symptoms of psychosis. The care provider indicated that Plaintiff had fair relationships, good social skills, good insight, good living skills, and good functional abilities. Plaintiff's GAF was assessed at 65. Tr. 367-377.

Plaintiff returned to the IOP on January 4, 2006 for an initial counseling appointment. He stated he had a 2.9 grade point average in his prior semester in college. He continued to work sixteen hours per week as a stocker, denied alcohol use, and acknowledged using marijuana three to four times per month. Plaintiff complained of poor sleep due to racing thoughts and identified his sleep schedule and "pot use" as trigger events. The care provider noted that Plaintiff appeared fatigued and depressed, with moderate anxiety, but no symptoms of psychosis. Tr. 364-365. On January 18, 2006, Plaintiff's care provider noted that his mood appeared "stable." Tr. 363.

Plaintiff reported on February 2, 2006 that he stayed up late at night, went to morning classes, and slept during the afternoon. He was working twenty hours per week, from 6 to 10 p.m.

Examination revealed that Plaintiff was alert and oriented, with a restricted affect, but euthymic mood, normal speech, and goal-directed thought processes. Tr. 362.

On February 23, 2006, Plaintiff reported a hypomanic episode (involving rapid speech and decreased sleep) due to being out of medication (Ativan). His symptoms diminished after he refilled his medication. Plaintiff's care provider noted that Plaintiff was alert and oriented, with an euthymic mood, congruent affect, normal speech, and goal-directed thought processes. His mood was noted to be stable. Tr. 360.

On March 8, 2006, Plaintiff reported he had been feeling better, had more energy, had been writing poetry, and was reading his work at an "open mic" event. He expressed some concerns about his grades, but was confident he would pass his classes. His psychologist noted that Plaintiff had a euthymic mood, congruent affect, normal speech, and goal-directed thought processes. Plaintiff's mood reportedly was brighter and relatively stable, and Plaintiff was noted to have improved functioning. Tr. 342, 359.

On March 22, 2006, Plaintiff reported to Dr. Ricardo J. Fermo (a psychiatrist) that he had been experiencing "a lot of mood swing[s] and rapid cycling." Examination revealed that Plaintiff had good insight and judgment. Dr. Fermo opined that when Plaintiff's symptoms were present they "resulted in impairment of social and occupational/academic level of functioning." He also opined that Plaintiff was "medically stable." Dr. Fermo adjusted Plaintiff's medication and instructed him to return in a month. Tr. 358.

On March 27, 2006, Plaintiff reported "rapid cycling" and poor sleep  Plaintiff said he had missed classes and work, and was worried he would fail a class. Examination at the IOP Outpatient

7

Clinic revealed that Plaintiff was alert and oriented, with a "mildly depressed" mood and restricted affect, normal speech, and goal-directed thought processes. Tr. 357.

## FUNCTION REPORT/HEARING TESTIMONY

In a Function Report dated August 21, 2006, Plaintiff reported that his illness had deteriorated in the last four months (Tr. 188). He reported difficulty sleeping. Tr. 183. During a typical day, he woke up about noon, fed his puppy and let it out, took his morning pills (left out by his father), and returned to his room to sleep. Tr. 183-184. Some days, his mother took him to a doctor's appointment or to a pool to swim. Tr. 183. He wrote that he got up again in the evening to eat supper, then watched television or went to the garage until returning to bed at three or five a.m. Tr. 183. Plaintiff reported that he attended a bipolar peer group. Tr. 187. He took out the trash twice a week, sometimes did his own laundry, drove to buy cigarettes, and went out with friends. Tr. 187-187. Plaintiff said he listened to the voices in his head, which had "taken over my life, especially in [the] past 4 months." Tr. 188.

At the hearing, Plaintiff stated that he has last worked in April 2006, the onset date of his impairments. He had worked as a cashier in a convenience store. He stated he had almost finished his bachelor's degree and that his parents took care of him financially. Plaintiff testified that he stopped working because he was having a lot of hallucinations, was under a lot of stress, had problems getting to work, and problems getting his work done. Tr. 28.

Plaintiff testified he had been in psychiatric care for ten years and was compliant with his medications except for a period during which he was manic. He stated that this resulted in a series of hospitalizations. Tr. 28-29. He reported continued auditory hallucinations, sleep disturbance, and anxiety disorder, even with medications. Tr. 29. Plaintiff testified he experienced irritability and

8

restlessness as side effects of his medication, and shakes as a side effect of Lithium. Tr. 30. He said work stress and being around people increased his symptoms. Tr. 30-31.

Plaintiff testified that Dr. Fermo managed his medications, saw him about once a month if everything was stable, and currently was seeing him biweekly. Tr. 32, 34. He also saw a therapist biweekly. Tr. 34.

## **DISCUSSION**

Plaintiff alleges that: (1) the ALJ improperly denied benefits on the basis of noncompliance; and (2) the ALJ performed an improper credibility analysis. The Commissioner contends that the final decision that Plaintiff was not disabled within the meaning of the Social Security Act is supported by substantial evidence[3] and free from harmful legal error.

A.    Noncompliance/Listings of Impairments

Plaintiff argues that the ALJ improperly denied benefits on the basis of noncompliance. The Commissioner argues that the ALJ did not find that Plaintiff's failure to follow prescribed treatment automatically resulted in a finding that he was not disabled; the record clearly shows that compliance with prescribed treatment rendered Plaintiff not disabled prior to April 1, 2006; the ALJ identified valid reasons to support his finding that Plaintiff did not meet Listing 12.04 prior to April 1, 2006; and even if the ALJ erred in considering Plaintiff's failure to follow prescribed

---

[3]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

9

treatment, the decision should be affirmed because the ALJ identified other valid reasons for his findings.

The ALJ's determination that Plaintiff did not meet Listing 12.04 (Affective Disorders) prior to April 1, 2006 is supported by substantial evidence. This listing requires that a claimant meet the specific requirement of the "A" criteria and establish the required level of severity by establishing two of the four "B" criteria or establish the "C" criteria. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.[4] In order to meet the "B" criteria, a claimant must show two of the following: marked

---

[4]This Listing specifically provides:
The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
    A. Medically documented persistence, either continuous or intermittent, of one of the following:

*****

        3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

And
    B. Resulting in at least two of the following:
        1. Marked restriction of activities of daily living; or
        2. Marked difficulties in maintaining social functioning; or
        3. Marked difficulties in maintaining concentration, persistence, or pace; or
        4. Repeated episodes of decompensation, each of extended duration;

Or
    C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
        1. Repeated episodes of decompensation, each of extended duration; or
        2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
        3. Current history of 1 or more years' inability to function outside a

(continued...)

restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. See id.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also have the findings shown in the listing of that impairment. 20 C.F.R. § 404.1525(d); see Bowen v. Yuckert, 482 U.S. 137, 146 and n. 5 (1987)(noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Medical equivalence can be found if the impairment(s) is/are at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a). A claimant has to establish that there was a "twelve-month period...during which all of the criteria in the Listing of Impairments [were] met." DeLorme v. Sullivan, 924 F.2d 841, 847 (9th Cir. 1991)(finding that the claimant's back impairment did not meet the requirements of section 1.05C; remanded on other grounds).

---

⁴(...continued)
        highly supportive living arrangement, with an indication of continued
        need for such an arrangement.

The ALJ's determination that Plaintiff did not have marked[5] restrictions in activities of daily living, marked difficulties in maintaining social functioning, or marked difficulties in maintaining concentration, persistence, or pace during the relevant time period is supported by substantial evidence. Plaintiff attended college, worked at a part-time job, wrote poetry, participated in "open mics," went out with friends, and performed at least some household chores. See Tr. 17, 18, 184-187, 359, 362. Additionally, substantial evidence supports a finding that Plaintiff did not experience three episodes of decompensation, each of extended duration, between March 27, 2005 and March 31, 2006. See Tr. 16, 19-20. Although Plaintiff underwent a series of in-patient hospitalization at the beginning of the relevant time period, the records indicate that his symptoms stabilized after that time and were generally controlled with medication and therapy during the remainder of the relevant time period. Tr. 19-20, see, e.g., Tr. 323, 342, 358-360, 362-365. Substantial evidence also supports a finding that Plaintiff did meet the "C" criteria during the relevant time period as he did not show repeated episodes of decompensation, each of extended duration; a residual disease process that resulted in such marginal adjustment that even a minimal increase in mental demand or change in environment would be predicted to cause the individual to decompensate; or a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. Plaintiff has not explained how he met two of the four "B" criteria or the "C" criteria prior to April 1, 2006.

---

[5]"A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere, seriously, with [a claimant's] ability to function independently appropriately, effectively, or on a sustained basis." See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C).

Plaintiff argues that the ALJ erred in finding him disabled based on his noncompliance. He argues, citing Preston v. Heckler, 769 F.2d 988 (4th Cir. 1988), that if noncompliance is found to be the basis for denying benefits, the ALJ must make particularized findings to establish that the impairment is reasonably remediable by the claimant given his social and psychological situation. Preston, 769 F.2d at 990. Plaintiff contends that his bipolar disorder was itself the cause of his noncompliance, he was not capable of appreciating the necessity of observing his regimen or having the organization to properly adhere to his required dosage, and treatment notes reflect that on one occasion he was either given the wrong prescription or it was filled wrong. He also contends that his series of hospitalizations fails to support the conclusion that when medicated he improved significantly for an appreciable length of time.

Unlike Preston, Plaintiff here was not found disabled based on his noncompliance. In Preston, the ALJ found that the claimant, who had diabetes mellitus, hypertension, anxiety neurosis, and carpal tunnel syndrome, had no severe impairments which the Fourth Circuit Court of Appeals found was not supported by substantial evidence. The magistrate judge assigned to the case determined that the ALJ's finding of no severe impairment was not supported by substantial evidence, but upheld the Secretary's decision upon his own finding that the claimant was not legally disabled because she failed to comply without good cause with a treatment problem that would remedy her impairments. Here, the ALJ found that Plaintiff had the severe impairment of bipolar disorder and considered whether it met the Listing. Noncompliance was only one of a number of factors considered in determining that Plaintiff was not disabled.

Further, even if Preston is applicable, the ALJ made specific findings concerning noncompliance. He specifically noted the medical evidence in which Plaintiff's treating and

13

examining physicians noted Plaintiff's deterioration with noncompliance and his improvement after taking his medications. The ALJ specifically cited treatment records from Plaintiff's March 27, 2005 hospitalization in which it was noted that Plaintiff had discontinued his use of Lithium two weeks prior and also admitted that he used marijuana regularly and his use of marijuana contributed to his mania. The ALJ noted that Plaintiff's treatment notes indicated that Plaintiff did well with medication. Tr. 19. At the time of his April 15, 2005 hospitalization, it was noted that Plaintiff admitted he was not taking his Seroquel on a regular basis and drug testing was positive for marijuana.[6] The ALJ noted the medical record indicated that with the restart of his medication Plaintiff was found to have a stable mood with normal interaction with others. Id. Medical records from Plaintiff's May 1, 2005 hospital admission indicated that Plaintiff was "noncompliant with his medication and abusing marijuana, which was found to have caused the severity of his illness. With treatment claimant was found only to be mildly irritable at times." Id. The ALJ also noted that on May 20, 2005, Plaintiff was noted to be stable with the use of medication, and treatment notes from the IOP indicated that when Plaintiff was compliant with his medication he had a relatively stable mood. Id.

Even if the ALJ erred in his consideration of noncompliance, such error is harmless. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir.1994)(finding an ALJ's error harmless where the ALJ would have reached the same result notwithstanding an error in his analysis); Stout v. Commissioner Soc. Sec., 454 F.3d 1050, 1055 (9th Cir. 2006)(mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless error); Allen v. Barnhart, 357

---

[6]At this hospitalization, Plaintiff apparently also had not been taking the proper dosage of Lithium due to either a prescription or filling error. The ALJ, however, does not cite this as a basis of Plaintiff's noncompliance or find that this was a basis for finding Plaintiff was not disabled.

14

F.3d 1140, 1145 (10th Cir. 2004)(noting the principle of harmless error applies to Social Security disability cases). Plaintiff has not met his burden to show that he met or equaled the Listing at § 12.04 for a period of at least twelve months prior to April 1, 2006.

B.  Credibility

Plaintiff alleges that the ALJ performed an improper credibility analysis. He argues that there is substantial evidence to support his contention that his impairments caused marked restriction in his daily activities from March 2005 onward. Specifically, he argues that he was hospitalized for periods of varying duration and he continuously reported poor sleeping, poor appetite, and growing difficulty meeting the obligations of a typical working college student. The Commissioner contends that the ALJ identified valid reasons for discounting the credibility of Plaintiff's subjective statements.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that

15

alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ properly considered Plaintiff's credibility by using the two-part test outlined above and considering the medical and non-medical record. At step one, the ALJ specifically found that Plaintiff had medically determinable impairments that could have reasonably been expected to produce some of the alleged symptoms. Tr. 17. The ALJ then properly considered the medical and non-medical evidence in determining that Plaintiff's subjective complaints were only credible to the extent that they reduced Plaintiff's RFC to heavy, unskilled work. Tr. 17-18.

The ALJ properly discounted Plaintiff's credibility to the extent that his subjective complaints were inconsistent with the medical evidence. As noted by the ALJ, Plaintiff's subjective complaints were not supported, prior to April 1, 2006, by the reports of Plaintiff's treating and examining physicians or findings upon objective examination. Tr. 17-18. As discussed above, the record indicated that Plaintiff's bipolar condition was generally well controlled when he adhered to his treatment and medication regimen, and Plaintiff's examining and treating physicians noted that Plaintiff's noncompliance with medication contributed to his adverse symptoms. The ALJ also properly discounted Plaintiff's credibility based on Plaintiff's daily activities. See Tr. 18. Prior to April 2006, Plaintiff worked as a cashier and a stocker. He was also able to attend college classes and write poetry. The ALJ also noted that Plaintiff was able to maintain friendships, care for his puppy, cook, wash laundry, drive, play games, and watch movies (Tr. 17). See Mastro v. Apfel, 270 F.3d 171, 179 (4th Cir. 2001)(claimant's daily activities undermined her subjective complaints).

**CONCLUSION**

Despite Plaintiff's claims, he fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

RECOMMENDED that the Commissioner's decision be **affirmed**.

Joseph R. McCrorey
United States Magistrate Judge

August 18, 2011
Columbia, South Carolina